**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER JAKEWAY,<br><br>Defendant | ) | Case No. 3:25-cr-00097-CCB-SJF |

# DEFENDANT'S SENTENCING MEMORANDUM

Comes now the defendant, Alexander Jakeway, by and through his counsel Donald J. Schmid, to submit the defendant's sentencing memorandum, along with character letters and other supporting documents.

Mr. Jakeway does not minimize the seriousness of the words that resulted in his conviction. He has pleaded guilty, accepted responsibility, and acknowledged in his plea agreement that the statements he posted constituted true threats. But sentencing requires consideration not only of the offense, but also of the individual who committed it, his history and characteristics, his conduct since the offense, and the sentence actually necessary to punish, deter, protect the public, and promote rehabilitation.

The record in this case presents unusually strong evidence that incarceration is unnecessary. Mr. Jakeway has no criminal-history points. He qualifies for the Guidelines' two-level reduction for a zero-point offender. He has strong and longstanding family ties, operates

his own business, assists in caring for his seriously ill grandmother, has substantial family support, is engaged in mental-health treatment, and has accepted responsibility for his conduct.

Most significantly, this Court does not have to speculate about whether Mr. Jakeway can safely and successfully comply with community supervision. He already has done so.

Mr. Jakeway was arrested on November 6, 2025. He remained incarcerated from November 6 through November 24, 2025, in the St. Joseph County Jail. After he appealed the detention order, this Court ordered his release on a $10,000 unsecured bond subject to Pretrial Services supervision and stringent conditions, including home incarceration. The revised Presentence Investigation Report confirms both the November 6 arrest and November 24 release on unsecured bond with pretrial supervision. (PSR at 1.)

The original release order subjected Mr. Jakeway to supervision by Pretrial Services, home incarceration, location monitoring, restrictions on contact with ICE or CBP agents, mental-health treatment, a prohibition on firearms and other weapons, controlled-substance restrictions, and a prohibition on social-media use. The Court later imposed additional social-media-account disclosure and device-monitoring requirements while retaining the other conditions of release.

From November 24, 2025 through the present, Mr. Jakeway has not violated a single condition of pretrial release. The revised PSR expressly states: "Pretrial services records indicate the defendant has complied with all Court ordered conditions of release." (PSR ¶ 6.) That sustained record of perfect compliance under unusually restrictive conditions is powerful evidence that a sentence of probation is sufficient.

# I. THE ADVISORY GUIDELINES EXPRESSLY PERMIT A SENTENCE OF PROBATION.

The revised PSR calculates a total offense level of 10. Mr. Jakeway has zero criminal-history points and is in Criminal History Category I. The resulting advisory imprisonment range is 6 to 12 months, within Zone B of the Sentencing Table. (PSR ¶¶ 27, 31, 61.)

This is not a case in which the Guidelines require imprisonment. Under U.S.S.G. §§ 5B1.1(a)(2) and 5C1.1(c)(3), a Zone B sentence may be satisfied through probation with an appropriate condition of intermittent confinement, community confinement, or home detention. The PSR specifically recognizes that Mr. Jakeway is statutorily eligible for one to five years of probation and that probation is an available Guidelines sentence. (PSR ¶¶ 66–68.)

Indeed, the Sentencing Commission's treatment of Mr. Jakeway as a zero-point offender provides still stronger support for a noncustodial disposition. The PSR states that because he received the § 4C1.1 adjustment and falls within Zone B, "a sentence other than a sentence of imprisonment ... is generally appropriate." (PSR ¶ 62.)

The plea agreement points in the same direction. The Government agreed that, if the Court determines the applicable range falls within Zone B, it will recommend probation with home detention sufficient to satisfy the minimum of the Guidelines range. Thus, the parties, the Guidelines, and the PSR all recognize probation as an appropriate sentencing option in this case.

The Guidelines are advisory, however, and the ultimate command of federal sentencing law is that the Court impose a sentence "sufficient, but not greater than necessary" to achieve the purposes identified by Congress. 18 U.S.C. § 3553(a). A court may impose probation when an

individualized application of those factors establishes that imprisonment is unnecessary. *Gall v. United States*, 552 U.S. 38, 46–50 (2007).

The Seventh Circuit likewise recognizes that district courts possess broad discretion to fashion an individualized sentence under § 3553(a), including probation where the circumstances warrant it. *United States v. Warner*, 792 F.3d 847, 855–61 (7th Cir. 2015). Probation is not an absence of punishment. It imposes a substantial restriction on liberty and remains backed by the Court's authority to revoke release and impose imprisonment if its conditions are violated. See *Gall*, 552 U.S. at 48; *Warner*, 792 F.3d at 861.

## II. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE ARE SERIOUS, BUT THEY DO NOT REQUIRE ADDITIONAL INCARCERATION.

Mr. Jakeway understands that his conduct was serious. On November 4, 2025, he made three social-media posts concerning ICE agents. He has pleaded guilty to transmitting a threat in interstate commerce in violation of 18 U.S.C. § 875(c), and his plea agreement acknowledges the threatening nature of those communications.

Acceptance of responsibility is important here because the defense does not ask this Court to relitigate whether the communications constituted true threats. The defendant admitted at his plea hearing that they did, and Mr. Jakeway accepts his conviction and accepts responsibility for making the November 4 posts.

But the circumstances also place the offense in perspective. The three statements were posted during a single episode on one day over the very short span of a few minutes. No identifiable victim is listed in the PSR. (PSR ¶ 15.) The pretrial record further reflects that

agents who came to and searched Mr. Jakeway's residence found no firearm or other weapon in Mr. Jakeway's possession and that he had no history of violence. Nothing in the subsequent months of intensive federal supervision has suggested that Mr. Jakeway intended to translate his words into any kind of actual violent conduct.

The attached letter from Dr. Robert Reff also puts the offense conduct in perspective, against the health struggles that Alex has had over the years.

Most importantly, his conduct since arrest supplies real-world evidence unavailable on the day the offense occurred. For nearly nine months now, Mr. Jakeway has lived under strict federal supervision without a violation. He has scrupulously obeyed all orders and home incarceration of the Court.

That does not erase the offense. It does, however, strongly inform the question the Court must answer at sentencing: what punishment is now necessary to protect the public, deter future misconduct, promote respect for law, and provide just punishment? As discussed below, the answer is probation, not imprisonment. The government agrees: "a probationary sentence is warranted in this case." (Govt. Sent. Memo., DE 57 at 3.)

## III. MR. JAKEWAY'S PRETRIAL HISTORY IS COMPELLING EVIDENCE THAT PROBATION WILL PROTECT THE PUBLIC.

The Court already has conducted what amounts to an extended, real-world test of whether Mr. Jakeway can be safely supervised in the community.

Following the initial detention order, the defendant appealed that order to this Court with the assistance of your undersigned counsel. The Court held a further detention hearing on November 21, 2025 and ordered Mr. Jakeway's release subject to stringent conditions. The docket reflects the Court's determination that home incarceration and restricted Internet access could sufficiently protect other persons and the community, followed by his actual release on November 24 after Pretrial Services confirmed that the conditions for home incarceration had been satisfied. Since then, Mr. Jakeway has done exactly what the Court required.

This compliance is particularly meaningful because his conditions have not been minimal or easy. The November 21 release order required 24-hour home incarceration except for very limited approved purposes and included an ankle bracelet GPS location monitoring, mental-health treatment, weapons restrictions, controlled-substance conditions, contact restrictions, and a prohibition on social media. On December 1, 2025, the Court additionally required him to disclose all social-media accounts and usernames and submit electronic devices to periodic, unannounced monitoring. Mr. Jakeway complied fully.

He did not abscond. He did not threaten anyone. He did not violate the social-media condition. He did not violate the restrictions on his movements. He did not commit another crime. He did not incur even a technical violation. The revised PSR's unequivocal statement that he "has complied with all Court ordered conditions of release" is therefore one of the most important facts before the Court at sentencing.

Section 3553(a)(2)(C) asks what sentence is necessary "to protect the public from further crimes of the defendant." Mr. Jakeway's performance under supervision demonstrates that continued community supervision can accomplish that goal.

## IV. THE COURT SHOULD CONSIDER THE SUBSTANTIAL RESTRICTION OF LIBERTY MR. JAKEWAY HAS ALREADY EXPERIENCED.

Mr. Jakeway was arrested on November 6, 2025 and spent the next eighteen days incarcerated before his November 24 release. Mr. Jakeway felt huge stress while in jail. Medications for his medical conditions were not given. To say that he suffered greatly during those eighteen days is not an understatement. The consequences of his offense did not end when he left jail.

Since November 24, 2025, he has been subject to home incarceration—a more restrictive form of location restriction than ordinary home detention. The Court's release order defined home incarceration as 24-hour-a-day lockdown at the residence except for medical necessities, court appearances, or activities specifically approved by the Court. Those restrictions have continued for nearly nine months.

Mr. Jakeway does not contend that this pretrial home incarceration must mechanically be credited as Bureau of Prisons custody under 18 U.S.C. § 3585. The point is instead one of individualized sentencing under § 3553(a): when determining how much additional punishment is necessary, the Court may consider the actual restrictions and consequences the defendant already has endured.

As the Supreme Court emphasized in *Gall*, probation itself constitutes a substantial restriction on liberty. 552 U.S. at 48. The Seventh Circuit reiterated the point in *Warner*, explaining that probation is a sufficiently serious sanction in an appropriate individualized case. 792 F.3d at 861.

Here, Mr. Jakeway's liberty already has been restricted far more extensively than that of an ordinary defendant awaiting sentencing. Eighteen days in jail followed by months of continuous home incarceration, electronic monitoring and intensive supervision have imposed meaningful punishment and deterrence. More importantly, Mr. Jakeway has demonstrated that he can comply with those restrictions perfectly.

Imposing a new prison sentence after that lengthy and successful period of highly restrictive supervision would provide little additional deterrent or protective value.

## V. MR. JAKEWAY'S HISTORY AND CHARACTERISTICS STRONGLY FAVOR PROBATION.

### A. He has no criminal-history points and qualifies as a zero-point offender.

The PSR reports no juvenile adjudications, no scored adult criminal convictions, no other criminal conduct, and no pending charges. His criminal-history score is zero, placing him in Category I. (PSR ¶¶ 28–33.)

His zero-point status is not merely descriptive. The Sentencing Commission created § 4C1.1 to recognize that qualifying defendants with no criminal-history points present materially different sentencing considerations. Here that provision reduces Mr. Jakeway's offense level by two levels, producing the Zone B range that makes a probationary sentence readily available under the Guidelines.

### B. He has substantial family ties and serves an important caregiving role.

Mr. Jakeway has deep roots in northwest Indiana. His family relocated to the area in 1997, and he has lived with his maternal grandmother for approximately eight years. The PSR

explains that his grandmother suffers from lung fibrosis, requires oxygen and in-home nursing care, cannot live alone, and that Mr. Jakeway moved into her home in part to assist with her care.

The Court itself has previously recognized this caregiving relationship. In modifying his conditions of release, the Court stated that it understood Mr. Jakeway to be his grandmother's primary caregiver and authorized Pretrial Services to approve necessary departures from his residence for her care.

His family members confirm the importance of that role. His mother describes him as caring and intelligent and recounts his daily assistance to his grandmother while developing his graphic-design business. His stepfather describes his conduct on home confinement as exemplary and his family support as complete and ongoing. His aunt, extended family members, and others similarly describe the offense as uncharacteristic and describe Mr. Jakeway as remorseful, hardworking, compassionate, responsible, and committed to becoming a better member of the community. (See Letters in Support of Alexander Jakeway, attached hereto.)

These letters do not excuse the offense. Their significance is that people who have known Mr. Jakeway for years or decades describe a person materially different from the angry words contained in three social-media posts made during a few minutes on a single day.

### C. He has worked, built a business, and has productive plans for the future.

Mr. Jakeway graduated from Valparaiso High School and completed 96 college credit hours after attending Purdue University North Central and Indiana University. He has considered returning to school to complete his degree. (PSR ¶ 53.)

He also has a substantial employment record. He owns and operates Heelest, a clothing-design and online-sales business. He previously worked for many years as a Jimmy John's delivery driver and periodically as a lighting director for a national touring production, in addition to other employment. (PSR ¶¶ 54–57.)

Probation permits Mr. Jakeway to continue working, develop lawful employment, assist his grandmother, pursue education, and remain connected to the pro-social family network that supports him. Those are protective factors. Incarceration would disrupt them without a demonstrated corresponding need for public safety.

## D. He is addressing his treatment needs in the community.

The PSR records physical-health conditions for which Mr. Jakeway receives treatment and notes that Pretrial Services referred him to Porter-Starke Services for evaluation. The resulting assessment recommended outpatient individual therapy, and Mr. Jakeway has been attending therapy.

Section 3553(a)(2)(D) directs the Court to consider the defendant's need for medical care and correctional treatment "in the most effective manner." Continued probation supervision can require adherence to mental-health treatment and medication while preserving continuity of existing providers.

The PSR itself identifies these circumstances—strong family support, education, employment and business ownership, treatment history, and physical and mental-health considerations—as mitigating factors relevant to § 3553(a). (PSR ¶ 79.)

## VI. MR. JAKEWAY HAS ACCEPTED RESPONSIBILITY AND DEMONSTRATED REMORSE THROUGH CONDUCT, NOT MERELY WORDS.

Mr. Jakeway pleaded guilty and admitted his offense conduct. The PSR concludes that he "clearly demonstrated acceptance of responsibility" and applies the corresponding reduction under U.S.S.G. § 3E1.1.

Acceptance of responsibility is further demonstrated by his conduct after release. For months, he has complied with every restriction imposed upon him. He has accepted monitoring, restricted his use of the Internet and social media, remained subject to home incarceration, participated in treatment, and followed the instructions of Pretrial Services.

The support letters consistently report genuine remorse and describe his commitment to learning from the offense. His family members do not deny or excuse what he did; rather, they ask the Court to consider whether the conduct represents the whole person and whether his subsequent behavior shows an ability to change and live a law-abiding life. See Letters in Support, pp. 1–6.

The answer supplied by the record is yes.

## VII. A PROBATIONARY SENTENCE SATISFIES EACH PURPOSE OF § 3553(a).

### A. Just punishment and respect for the law

Mr. Jakeway has experienced immediate and substantial consequences: arrest, eighteen days in jail, prosecution for a federal felony, months of home incarceration and monitoring,

restrictions on Internet and social-media access, mental-health requirements, and the lasting consequences of a federal conviction.

Probation will continue to restrict his liberty and subject him to federal supervision. A defendant on probation remains under the authority of the Court and faces substantial consequences for any violation.

A sentence need not include prison in order to be serious. *Gall*, 552 U.S. at 48 (Supreme Court affirmed the district court's sentence of three years' probation, well below the guidelines range of 30-37 months in prison); *Warner*, 792 F.3d at 861. As the Seventh Circuit said in *Warner*: "3553(a) does not command courts to send the strongest message possible; it commands them to impose a sentence that is 'sufficient, *but not greater than necessary*' in the circumstances of each case." *Warner*, 792 F.3d 847, 860 (emphasis in original). As in *Warner*, a sentence of probation is wholly appropriate here sufficient under the circumstances of this case.

## B. Specific deterrence

There is little reason to believe imprisonment is required to deter Mr. Jakeway personally. His offense has already resulted in jail, federal prosecution, a felony conviction, and months of highly restrictive supervision. His perfect compliance demonstrates that he understands the consequences of violating the law or the Court's orders.

## C. General deterrence

A federal felony conviction followed by substantial probation conditions carries a public and concrete consequence. General deterrence does not require imprisonment in every case,

particularly where Congress and the Sentencing Commission have expressly authorized probation for the applicable sentencing range.

### D. Protection of the public

This factor strongly favors probation. Mr. Jakeway has been living in the community under supervision since November 24, 2025 without a single violation. That is direct evidence—not prediction—that he can be safely supervised.

### E. Rehabilitation and treatment

Continued community supervision will allow Mr. Jakeway to remain engaged in mental-health treatment, work, assist his grandmother, maintain supportive family relationships, and potentially complete his education. These goals would be disrupted, rather than advanced, by incarceration. Indeed, it is no hyperbole that Mr. Jakeway could even survive another period of time in jail or a prison. Those eighteen days in jail in November 2025 were incredibly hard on him.

## VIII. A SENTENCE OF PROBATION IS SUFFICIENT AND A TERM OF IMPRISONMENT WOULD BE GREATER THAN NECESSARY.

The question under § 3553(a) is not whether imprisonment could be imposed. It plainly could. The question is whether imprisonment is necessary. It is not.

The advisory range is only 6 to 12 months and falls in Zone B. Mr. Jakeway is a zero-point offender. The Guidelines expressly authorize probation. The PSR states that a non-imprisonment sentence is generally appropriate for a qualifying zero-point offender in Zone A or

B. The Government agreed in the plea agreement to recommend probation if, as the PSR now concludes, the range falls in Zone B.

Mr. Jakeway has also already endured eighteen days of incarceration and nearly nine months of home incarceration and federal supervision. Throughout that period, he has maintained perfect compliance. The Court therefore has unusually concrete information about the likelihood of success on probation. Mr. Jakeway has effectively demonstrated it in advance.

If the Court concludes that the advisory Guidelines technically call for a new six-month period of home detention as a condition of probation under §§ 5B1.1 and 5C1.1, Mr. Jakeway respectfully requests a variance under § 3553(a) to the extent necessary to avoid imposing an additional period of confinement. The months he has already spent on the more restrictive condition of home incarceration are highly relevant in deciding the amount of additional punishment necessary. Requiring still more confinement would be greater than necessary to accomplish the statutory purposes. The government offers no compelling reason in its sentencing memorandum (DE 57) why another six months of home detention is required here – when Mr. Jakeway has already served 18 days in jail and nine months home detention while in pretrial release.

Alternatively, if the Court determines some continued location restriction remains appropriate as a condition of probation, the defense respectfully asks that it be tailored to permit employment, education, medical and mental-health treatment, caregiving for his grandmother, religious services, and other activities approved by Probation.

# CONCLUSION

Alexander Jakeway made serious and unacceptable statements. He has accepted responsibility for them and will carry the consequences of a federal felony conviction. But § 3553(a) requires an individualized sentence, not punishment beyond what is necessary.

Mr. Jakeway was arrested on November 6, 2025. He spent eighteen days in jail in that month. After successfully challenging the original detention order, he was released by this Court on November 24, 2025 on an unsecured bond under Pretrial Services supervision and home incarceration. From November 24, 2025 through the present, **he has not violated a single condition of release**. The Probation Office confirms his complete compliance.

He has zero criminal-history points. He qualifies for the zero-point-offender adjustment. His advisory range is 6 to 12 months in Zone B. Probation is expressly authorized. He has a stable residence, a productive work history, his own business, substantial family support, important caregiving responsibilities, ongoing treatment, and a demonstrated record of successful supervision.

The purposes of sentencing can be fully accomplished without sending Mr. Jakeway to prison or even placing him on further home detention. For these reasons, Mr. Jakeway respectfully requests that the Court impose a sentence of probation of 12 months probation, with appropriate noncustodial conditions, and no additional term of incarceration or detention.

Dated: September 26, 2026

Respectfully submitted,

Law Offices of Donald J. Schmid LLC
Donald J. Schmid
Eric J. Tamashasky

/s/ *Donald J. Schmid*

Donald J. Schmid

1251 N. Eddy St., Suite 200
South Bend, IN 46617
Tel. 574-993-2280
Email: schmid@donaldschmidlaw.com

*Attorneys for Defendant Alexander Jakeway*

# Support/Character letters

Melissa Jakeway-McDaniel

Michael P. McDaniel

Jessica L. McManus

April Berta

Patricia McDaniel Kuntz

Luke Notorangelo

Isabella S. Notorangelo

Matt Mudrich

David A. Summers

Zach Vouga

Igor Harris

Dr. Robert A. Reff

Melissa Jakeway-McDaniel

627 Hilltop Road

Sawyer, MI 49125

westme27@yahoo.com (219) 873-6008

July 21, 2026

The Honorable Crystal C. Briscoe

United States District Judge

United States District Court, Northern District of Indiana

204 S. Main Street

South Bend, IN 46601

Dear Judge Briscoe:

I am writing this character reference letter as the mother of Alexander Jakeway.

My son Alex is a caring and intelligent person. From an early age he showed a love for music and the arts. He is a loyal friend with friendships dating back to grammar school. Alex has a strong moral code and a firm sense of right and wrong.

For the last five years my son has lived with my invalid mother, helping her with daily tasks as her health has continued to decline. During this time he successfully created an online graphic design business incorporating his love for music.

I understand the seriousness of the charges my son is facing and I know he is remorseful for the actions that have brought him to this place. I honestly feel my son is no threat to the community and would deeply appreciate your consideration of his very positive attributes when deciding his sentence.

Respectfully,

Melissa Jakeway-McDaniel

Melissa Jakeway-McDaniel

# Michael P. McDaniel

July 16, 2026

To the Honorable Judge Brisco
U. S. District Court for Northern Indiana
Re: Character Reference for
Alexander Jakeway
Case No:3:25-CR-97-CCB

Dear Judge Brisco,

My name is Michael McDaniel and I am a retired senior executive from the financial services industry. I am Alex Jakeway's stepfather since May 2014 but have known Alex since he was six years old. Alex was an outgoing and curious child and has grown into an intelligent, serious and well-spoken young man. He is artistic and entrepreneurial, having created a successful online clothing business focused on one of his true passions: music. He is demonstratively responsible, currently living with and caring for his grandmother who has both serious cardiac and pulmonary disease and who cannot live by herself. Alex has a strong sense of morality and is passionate about social equality. He is not at all a violent or dangerous person and has never owned a gun or other weapon. He is not, in my judgement, a threat of any sort to the community. He understands the mistake he made that has brought him to this current situation and before this court and has expressed deep remorse for his actions. His comportment during house arrest has been exemplary and he has the complete and ongoing support of our entire family going forward. I believe Alex has learned from his mistake and would be a positive and productive member of the community and respectfully request you take his positive attributes and contributions into consideration in determining his sentence.

Respectfully, Michael P. McDaniel
627 Hilltop Sawyer, MI 49125 708-822-9742

**Jessica L. McManus**
315 North Chicago Street
New Buffalo, MI 49117
Jessnotr@comcast.net | (219) 309-5283
July 16, 2026

The Honorable Crystal C. Briscoe
United States District Judge
United States District Court, Northern District of Indiana
204 S. Main Street
South Bend, IN 46601

**Dear Judge Briscoe:**

I am writing to provide a character reference for my nephew, Alexander Jakeway, who is appearing before your court.

I am Alex's aunt, his mother's sister, and I have known him his entire life. He is a kind, loving, intelligent, compassionate, and genuinely funny person. He has always been thoughtful and sensitive to others and has always placed a great deal of importance on his family and the friendships he has maintained over the years. From a young age, Alex has always had a deep love of music and enjoyed attending concerts. He has a quick wit, a wonderful sense of humor, and a natural ability to make people laugh. People enjoy being around him because of his kindness and his positive attitude.

When Alex was only 13 years old, he lost his father, to whom he was extremely close. It was a heartbreaking loss during such an important and vulnerable time in his life. Despite that tragedy, Alex persevered. He worked hard, maintained excellent grades in school, and continued moving forward with the love and support of his family. I have always admired his resilience, determination, and strength of character during that difficult period.

I am aware of the charges Alex is facing, and I do not take them lightly. However, I truly believe he is remorseful, has learned from this experience, and is committed to making better choices moving forward. Throughout these proceedings, he has continued to operate the business he built on his own, demonstrating responsibility, determination, and a strong work ethic. Alex has taught himself a great deal through hard work and perseverance, and I know he genuinely wants to do the right thing. I believe this experience has given him a greater appreciation for personal responsibility, and I am confident he will continue to grow from it with compassion, maturity, and a genuine desire to make a positive difference. He has a great deal to offer, and I believe he will continue on a positive path as a productive member of society.

Thank you for your time and consideration. I respectfully ask that you consider the person I have known his entire life when making your decision. If you have any questions, please feel free to contact me.

Sincerely,

Jessica L. McManus

**Jessica L. McManus**

Mrs. April Berta

1508 Meadowland Drive

Naperville, Illinois 60540

april.notorangelo@gmail.com

630/362-8450

July 19, 2026

Dear Judge Cristal Brisco,

I am writing to provide a character reference for Alex Jakeway, who is appearing before your court. I have known him for 25 years in the capacity of an extended family member. I am confident in his integrity, responsibility, and character.

In my experience, Alex has consistently demonstrated kindness and respect throughout the years. Both to me, my husband, and our three daughters. I always look forward to catching up with Alex at family gatherings. We have many wonderful conversations about music, concerts, and current world affairs. He is so knowledgable in these areas. I always leave our conversations with further insight. Alex lost his amazing father at a young age. He handled this unfortunate event with resilience. Furthermore, he approaches challenges with utmost diligence.

I believe that Alex's actions and decisions are guided by a strong moral compass and a deep respect for his community, the law, and his family. He has a strong, loving family (which I am fortunate enough to be a part of) who support him. Our family is deeply rooted in morals and ethics. Alex has always been a person of integrity, and I have no doubt that he will continue to uphold these values moving forward.

I am aware of the charges Alex is facing, and I firmly believe that this situation is uncharacteristic of his usual conduct. I am confident that Alex deeply regrets his involvement in this matter and is dedicated to learning from this experience and becoming a better member of society.

Based on my knowledge of Alex's character and his contributions to our family and community, I respectfully request that the court consider his positive attributes and potential for rehabilitation when making his sentencing decision.

If you require any further information or have any questions, please do not hesitate to contact me at (630)362-8450.

Thank you for considering my perspective.

Sincerely,

Mrs. April Berta

Patricia McDaniel Kuntz
25560 Cleveland Road
South Bend, IN 46628
574-344-3107
Katrish@aol.com
July 10, 2026

The Honorable Cristal Brisco
US District Court
204 South Main Street
South Bend, IN 46601

RE: Character Reference for Alex Jakeway

Dear Judge Brisco,

I'm writing this letter on behalf of Alex Jakeway whom I am related to and have known for 20 years. I am a retired Special Educator and worked with teens with behavior disorders, delinquency and learning disabilities over the four decades of my career.

While I'm aware of Alex's actions and plea, I know him as an intelligent young man with artistic talents, love for his family and friends, living with his ill grandmother allowing her to remain in her home, and deeply remorseful for his actions. Your Honor, Alex handles his frustrations and disappointments with words of anger -"raging at the Gods", if you will - as typical of neurodivergent individuals. He has not, nor do I believe he would, harm another person. He has positive potential and family support.

Thank you for taking time to read this.

Respectfully,

[signature]

Luke Notorangelo
234 Market Avenue Southwest
Grand Rapids, MI 49503
Luke.notor51@gmail.com, 1-269-921-2426
July 25, 2026

The Honorable Crystal C. Briscoe
United States District Judge
United States District Court, Northern District of Indiana
204 S. Main Street
South Bend, IN 46601

Dear Judge Briscoe,

I am writing to provide a character reference for Alexander Jakeway, who is appearing before your court. I have known Alex for my entire life. He is my aunt's son, and I have always looked up to him as an older brother and someone who has always been there for me in the hardest of times in my life. He is compassionate, loving, intelligent, funny, and I am confident in his integrity, responsibility, and character.

In my lifetime and relationship of knowing Alex, he has consistently demonstrated hard-work ethic, honesty, trustworthiness, compassion, and integrity for others. He approaches challenges with his utmost diligence. Alex always strives to follow through on his commitments to always be counted on to do what he says he will do, whether at work, with family, or in his personal life

I believe that Alex's actions and decisions are guided by a strong moral compass and a deep respect for his community and the law. He has always been a person of integrity, and I have no doubt that he will continue to uphold these values moving forward.

I am aware of the charges Alex is facing, and I firmly believe that this situation is uncharacteristic of his usual conduct. I am confident and believe in my heart that Alex deeply regrets his involvement in this matter and is dedicated to learning from this experience and becoming a better member of society.

Based on my knowledge of Alex's character and his contributions to our community, I respectfully request that the court consider his positive attributes and potential for rehabilitation when making his sentencing decision.

If you require any further information or have any questions, please do not hesitate to contact me at 1-269-921-2426 or Luke.notor51@gmail.com.

Thank you for considering my perspective.

Sincerely,

Luke Notorangelo

**Isabella S. Notorangelo**
315 North Chicago Street
New Buffalo, MI 49117
Notorbella@gmail.com | (269)-910-0115
August 6, 2026

The Honorable Crystal C. Briscoe
United States District Judge
United States District Court, Northern District of Indiana
204 S. Main Street
South Bend, IN 46601

**Dear Judge Briscoe,**

I am writing to provide a character reference for Alex Jakeway who is appearing before your court. I have known Alex for 21 years in the capacity of being my cousin, and I am confident in his integrity, responsibility, and character.

As his younger cousin, Alex has always displayed qualities of love and compassion for his family and friends, respect and sensitivity towards those in his community, and passion for music and the arts surrounding him. Alex has always shown qualities of being a kind, gentle, and passionate person to those around him; especially, towards our Grandmother whom he helps with her daily tasks.

I believe that Alex Jakeway's actions and decisions are guided by a strong moral compass and a deep respect for his community and the law. Alex has always been a person of integrity and shown love for his family and friends.

Thank you for your time and consideration.

Sincerely,

Isabella Notorangelo

Isabella Notorangelo

To whom it may concern,

My name is Matt Mudrich and I'm a Senior Engineer for a large Software company. I've been working professionally in my field since 2010, including a stint running my own consultancy. I'm writing this letter today in Support of one of my best friends, Mr. Alexander Jakeway.

Alex and I met by chance on a random sidewalk in Valparaiso, IN around 2003. During our initial conversation we instantly bonded over a shared love of music, skateboarding, and guitar. Throughout the next twenty plus years Alex and I have maintained an incredibly close friendship supporting one another through times of hardship and prosperity. I don't know if either of us knew it that day, but that chance meeting set us both up for a life-long brotherhood.

Throughout our friendship I've witnessed Alex treating animals and humans alike with nothing but compassion, kind-heartedness and extreme care for their well-being. When in a group setting Alex has always done his best to ensure those he's with are having a great time whether that's through using his unique sense of humor to bring smiles to everyone's faces or being a gracious host ensuring everyone is comfortable and accounted for. In more private settings, when Alex asks you how you're doing, he really means it and will do everything is his power to show you a good time if you're having a rough day even if it means taking part in activities he's not particularly thrilled about or into.

My Mom was diagnosed with cancer in 2018, and Alex was one of my first friends to reach out and ask how she was doing. He would check in on her regularly throughout her treatments, offer to bring her food or anything he could to help keep her comfortable in a dark time. He would also check in on me to see how I was knowing that I feared the possibility of losing my mother.

Alex had a very special friend growing up, Finn, his golden retriever, lovingly called "Jovi". Finn and Alex were basically inseparable, growing up together. Every year during the 4th of July Finn would have anxiety attacks during the firework celebrations and every year from the time Finny was a puppy until his untimely passing, Alex would do anything in his power to make sure that dog felt comfortable during the yearly firework celebration, it didn't matter if that meant cancelling plans for the evening or locking himself in the room and hugging him tight. Alex's main priority every year on the fourth was that dogs comfort.

Alex can at times be incredibly passionate about his opinions and feelings, but those feeilngs are never backed by anything but a huge heart, compassion or the well-being of others. Alex has never been a violent person, and I genuinely believe he doesn't have the capacity to be. Nothing he's shown me in public or private in the past twenty-plus years of friendship makes me think otherwise. What he's experienced over the past year does not represent the person I know he is, and I genuinely believe he has learned his lesson.

Kind Regards,

Matt Mudrich
219-241-1677

m.mudrich@gmail.com
Date: Aug 19th, 2026

To whom it may concern,

My name is David Summers, I'm a Lighting Designer and Programmer for A-Level International music acts. I have been working in the live music industry for the better part of 16 years, now I'm trusted with multimillion dollar projects/productions and currently reside in Colorado. I am writing this letter in full support of Mr. Jakeway, to share my experiences of his character, his kind nature, and how he poses no threat to any person or any property.

I met Alex in 2004 as we exited middle school, we shared an incredible amount of similarities and mutual interests and became close friends instantly. We stayed close friends throughout high school, college, and even became roommates in 2016 for a year in Portage, IN. In this time I have seen him care for my dog as if he was his own, seen him pay bills on time, and take care of his portion of our townhouse. Hes been reliable, dependable, and a constant in my life for as long as I can remember. Hes helped me through losing my mother, he's become a great uncle to my kids and started a successful online business. He is a good person who doesn't have a violent bone in his body and he posses a threat to no one.

As a Lighting Designer I have opportunities to place people in jobs if I think they have the skillset to achieve the tasks at hand. Alex was one of my apprentices in this regard. He's worked with me as a Lighting Technician in Philadelphia, he's worked for me as a Lighting Director at historic music venues all across the US, and there are future plans for more work opportunities for him, if and when he needs it.

I know this man maybe better than anyone, we've truly been through it all together. Grade school, high school, college, roommates, coworkers, I have seen him at every phase and this is a good man who has never and will never be a threat. While I do agree that Alex can have moments where he gets too passionate on the internet, I believe the severity of this situation has done more than enough to ensure he never repeats this process. He fully understands the severity of his actions and I think we'll all see real change from him from this point on.

I trust this man with my children, with my reputation, with my life. To me he is a brother in the most true sense of the word. Thank you for your consideration and your time.

Best,
David A Summers
219-477-8555
DSUMMERSLX@GMAIL.COM
July 31, 2026

To whom it may concern,

My name is Zach Vouga. I am the co-founder and COO of a vegan restaurant chain called Plant Power Fast Food, based primarily in California. I was honored to be listed in *Forbes 30 Under 30* in 2020. I am writing on my own initiative about my friend Alex Jakeway. Alex and I have been friends since we were freshmen in high school in 2004.

I want to be clear at the outset that I understand why Alex is before you. I know the nature of the charge, and I am not writing to minimize it or to argue the facts. What he is accused of saying is serious, and I do not defend it. I am writing because I have known Alex for more than twenty years, since we were teenagers, and the man described in that case is not the whole of the person I know.

The Alex I know is a gentle, sweet-natured person at his core. Alex lost his father when he was too young to lose him and I believe that marked him. Over the years he grew increasingly isolated, living much of his life online and much of it alone, pulling away from the people who cared about him. But that never changed who he is. He has always been a caretaker for friends and family in need. When his grandmother was aging, he put much of his own life on hold to stay home, look after her, and be there with her. In all my years knowing Alex, he has never once shown me that he is capable of violence of any kind. I do not offer any of this as an excuse for what he wrote. I offer it because I believe those words came out of isolation and pain, not out of who he actually is.

Alex has expressed genuine remorse to me for what he wrote. I do not at all believe that it is a performance for the sake of this case. I believe this is a person who understands he crossed a line he should never have gone near.

I believe Alex is capable of becoming a better person than the worst thing he has ever said, and I believe he already regrets it deeply. I respectfully ask the Court to consider the whole of him, and to temper its judgment with the possibility of his rehabilitation. I am glad to answer any question or to provide anything further that would help.

Respectfully,

Zach Vouga
Plant Power Fast Food co-founder/COO
*Forbes 30 Under 30*
219-242-2816

To Whom It May Concern:

My name is Igor Harris. I am a California-licensed attorney in good standing. I have practiced
law in California for over five years. I write this letter in my personal capacity, in support of Alexander F. Jakeway, to attest to his good moral character and to assure whoever is reading that Alex has no propensity for violence and poses no danger to the community.

I have known Alex since approximately 2005. We became close friends and were college roommates, and we have maintained regular correspondence in the years since I relocated from Indiana to California. Over that time, I have come to know Alex as a reliable, caring person, a talented graphic design artist, and, overall, a good human being. In my honest assessment, having known him for more than twenty years, I can confidently say that I do not see him causing physical harm to another human being, or to any living being. He has never displayed violent tendencies.I have never seen Alex engage in a physical altercation with anyone. He is also compassionate toward animals, which says a great deal about the kind of person he is.

After college, Alex had the opportunity to relocate to California and start a new life here doing graphic design and social media work, collaborating with local businesses and up-and-coming artists. He also had the opportunity to tour the country regularly, and possibly the world, doing lighting work as part of a stage crew on many different occasions. He decided to remain in Valparaiso, Indiana, to care for his aging grandmother, who requires round-the-clock help.

Despite this personal sacrifice, Alex still managed to take advantage of important professional opportunities. He toured the country in sold out theatres as a lighting director. He visited me before a stop in Los Angeles in 2023 on that tour. He has collaborated with several businesses in California, creating many flyers, logo designs, menus, and t-shirts for local businesses and events. For example, Alex did very nice business cards for my first solo venture, had them designed and delivered to me. He also did some good design work for another personal injury firm here in San Diego. I can only imagine how much more he could have done had he moved out here, and I sincerely hope that one day soon he will.I believe he has a strong future ahead of him and I look forward to working with him again.

Alex maintains an online presence through his brand, *Heelest*, through which he sells merchandise and promotes his graphic design work. The brand is characterized by an intentional stream-of-consciousness communication, which is a unique and innovative branding tool. The brand is his way of preserving a subculture he cares about deeply and seems to be doing quite well. He has maintained a consistent creative output in that business for at least three years, starting it from scratch and developing his creative flow over time. He runs the business by himself, operating it out of his bedroom. He takes freelance work as well, as indicated above in designing menus for restaurants and local record stores in

California, among other collaborative efforts. He has a strong following and a significant customer base which I consider a success. I personally own several of his shirts, and they show a clear standard of high quality work. They are honestly some of the best shirts I have, he always does a great job.

When one considers his overall pattern of Instagram stories and posts and comments on X (formerly Twitter), it becomes clear that the posts at issue were entirely uncharacteristic and do not represent Alex's routine manner of online expression. I believe this was an isolated mistake, and I respectfully ask for leniency in his sentencing. I believe he has learned his lesson thoroughly. I believe he poses no danger to anybody. Quite the opposite, as I've seen for 21 years.

Thank you for your consideration. Please do not hesitate to contact me if I can provide any further information.

Respectfully,

Igor Harris
Tel: 858-289-2742
Email: igor@sentinellawsd.com
Dated: July 14, 2026

**Robert A. Reff, MD, LFAPA**
**102 Clinton Ave**
**Montclair, New Jersey**
**Phone: 312-981-3370**
**Fax: 312-981-3375**

June 29, 2026

Re: Alexander Jakeway
DOB: 07/09/1990

To Whom It May Concern,

My name is Dr. Robert Reff and I am a Board-Certified Psychiatrist. I have known Alex since he was a child and have worked with him professionally since 2010. We have been meeting regularly since 2021.

Alex has a history of depression which began as a child following the untimely death of his father, as well as Attention Deficit Hyperactivity Disorder, combined. He has symptoms of Obsessive Compulsive Disorder and can be considered to have "neurodiversity". Meaning, he processes information differently than others of his cohort or differently in ways that might be considered typical for his age and experience. He takes a combination of psychotropic medication for his conditions. He also has been struggling with severe gastrointestinal and degenerative disc problems for which he has sought treatment for many years.

He has had difficulty maintaining and sustaining social interactions. He is prone to heightened and at times overwhelming anxiety. He has struggled with aspects of his daily life including sustaining an organized home and being able to keep up with the demands of work.

His ADHD makes it difficult for him to focus or stay still. He often responds to stimuli impulsively and deals with consequences after the fact. Case in point is his current legal problem.

Alex has never manifested any evidence of violence. He does not possess a weapon and has stated that he abhors firearms. His statements in the blog he sent were impulse driven and not meant to be interpreted literally but rather were a manifestation of his sense of frustration. Since being on home detention, he has focused on caring for his grandmother, taking care of their home, and not participating in any activity that could

potentially be thought of as causing or contributing to any conflict. He does not abuse drugs or alcohol. He has continued to work diligently in his individual therapy.

I hope that the above information has offered some insight into Alex. However, if I can be of further assistance, please let me know.

Yours truly,

Robert A. Reff, MD, LFAPA
Life Fellow, American Psychiatric Association
Board Certified, Psychiatry
Licensed to practice medicine in the State of Indiana, Illinois, and New Jersey